1    SEYFARTH SHAW LLP
     Ryan McCoy (SBN 276026)
2    rmccoy@seyfarth.com
     560 Mission Street, 31st Floor
3    San Francisco, California 94105
     Telephone: (415) 397-2823
4    Facsimile: (415) 397-8549

5    SEYFARTH SHAW LLP
     Michelle Zakarian (SBN 327628)
6    mzakarian@seyfarth.com
     2029 Century Park East, Suite 3500
7    Los Angeles, California 90067-3021
     Telephone: (310) 277-7200
8    Facsimile: (310) 201-5219

9    Attorneys for Defendants
     SUEZ WTS SERVICES USA, INC. and
10   GE MOBILE WATER, INC.

11

12              UNITED STATES DISTRICT COURT

13            SOUTHERN DISTRICT OF CALIFORNIA

14

15   MARTIN BULNES, individually, and on behalf of other members of the general
16   public similarly situated,

17             Plaintiff,

18       v.

19   SUEZ WTS SERVICES USA, INC., an unknown business entity; GE MOBILE
20   WATER, INC., an unknown business entity; and DOES 1 through 100,
21   inclusive,

22            Defendants.

Case No. **'22CV1154 BAS AHG**

(Removed from San Diego County Superior Court Case No. 37-2022-00021906-CU-OE-CTL)

**NOTICE OF REMOVAL OF CIVIL ACTION TO THE UNITED STATES DISTRICT COURT**

[*Filed concurrently with Civil Case Cover Sheet, Certification of Interested Persons or Entities, Corporate Disclosure Statement, Declaration of John Couch, and Declaration of Ryan McCoy*]]

Action Filed: June 7, 2022

**TO THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF CALIFORNIA AND TO PLAINTIFF AND HIS COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that that Defendant SUEZ WTS SERVICES USA, INC. ("SUEZ WTS" or "Defendant") hereby removes the above-captioned action from the Superior Court of the State of California, County of San Diego, to the United States District Court for the Southern District of California, pursuant to 28 U.S.C. sections 1441 and 1446, asserting original federal jurisdiction under 28 U.S.C. section 1332(d)(2), and state that this Court has jurisdiction over the action pursuant to the Class Action Fairness Act of 2005 ("CAFA") for the following reasons.[1]

## I.    BACKGROUND

1.    This removal involves an action filed on June 7, 2022, in the Superior Court of the State of California for the County of San Diego, entitled *Martin Bulnes, individually, and on behalf of other members of the general public v. SUEZ WTS Services USA, Inc.*, *et al.*, Case No. 37-2022-00021906-CU-OE-CTL (the "Complaint").

2.    In his Complaint, Martin Bulnes ("Plaintiff") purports to assert ten claims for relief stemming from his employment with SUEZ WTS in the County of San Diego, California.  Plaintiff alleges that SUEZ WTS failed to observe, as to himself and all non-exempt employees of SUEZ WTS in California, from June 7, 2018 to present, the requirements set forth in: [1] Labor Code §§ 510 and 1198 (unpaid overtime); [2] Labor Code §§ 226.7 and 512(a) (unpaid meal period premiums); [3] Labor Code § 226.7 (unpaid rest period premiums); [4] Labor Code §§ 1194, 1197, and 1197.1 (unpaid minimum wages); [5] Labor Code §§ 201 and 202 (final wages not timely paid); [6] Labor Code §§ 204 (wages not timely paid during employment) [7] Labor Code §§ 226(a) (non-compliant wage statements); [8] Labor Code §§ 1174(d)

---

[1] SUEZ WTS Services USA, Inc. is the new corporate name of GE Mobile Water, Inc., effective November 19, 2017, which was before the beginning of any limitations period in the case.  *See* Declaration of John Couch, ¶11, Ex. A.

DEFENDANT'S NOTICE OF REMOVAL

(failure to keep requisite payroll records); [9] Labor Code §§ 2800 and 2802 (unreimbursed business expenses); [10] Business & Professions Code § 17200 *et seq.* (unfair competition law).

## II.    TIMELINESS OF REMOVAL

3.    On June 16, 2022, Plaintiff served on SUEZ WTS' attorneys the following process: (1) Notice and Acknowledgement of Receipt; (2) Summons; (3) Complaint; (4) Civil Case Cover Sheet; (5) Notice of Case Assignment and Case Management Conference; and (6) Notice to Litigants Regarding ADR Information and Stipulation to Use ADR.  A true and correct copy of the process served is attached as Exhibit A to the Declaration of Ryan McCoy ("McCoy Decl.").

4.    On July 6, 2022, service of Plaintiff's Summons and Complaint was effectuated on SUEZ WTS when its authorized representative signed the appropriate Notice and Acknowledgement.  McCoy Decl. at ¶ 4.  A true and correct copy of the Notice and Acknowledgement of Receipt -- Civil, showing an July 6, 2022 signature and service date is attached as **Exhibit B** to the Declaration of Ryan McCoy.

5.    A true and correct copy of the Class Action Complaint, Civil Cover Sheet, Summons and all other papers received by SUEZ WTS in state court are attached collectively, as **Exhibit A** to the Declaration of Ryan McCoy.

6.    SUEZ WTS filed its Answer to the Complaint in the California State Superior Court, County of San Diego on August 4, 2022, a true and correct copy of which are attached as **Exhibit C** to the Declaration of Ryan McCoy.

7.    This Notice of Removal is timely because it is being filed within thirty days of SUEZ WTS' signing the acknowledgement of receipt of the summons and complaint on July 6, 2022, effecting service.  28 U.S.C. § 1446(b)(2)(B) ("Each defendant shall have 30 days after receipt by or service on that defendant of the initial pleading or summons . . . to file the notice of removal.")

8.    Thus, this Notice of Removal is therefore filed within thirty days of service of a copy of the initial pleading setting forth the claim for relief upon which this action is

based, and is timely pursuant to 28 U.S.C. section 1446(b) and *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344 (1999) ("if the complaint is filed in court prior to any service, the removal period runs from the service of the summons").

9.     SUEZ WTS has not secured the consent of the "DOE" defendants before removing this action because they do not know the identity of the "DOE" defendants and have no reason to believe that any of them have been properly served or have voluntarily appeared in this action. *Fristoe v. Reynolds Metals Co.*, 615 F.2d 1209, 1213 (9th Cir. 1980) ("[u]nknown defendants sued as 'Does' need not be joined in a removal petition."). In addition, pursuant to CAFA, SUEZ WTS need not obtain the consent of any other defendant to remove this action. *See* 28 U.S.C. § 1453(b).

## III.    REMOVAL OF THIS ACTION IS APPROPRIATE UNDER CAFA

10.     This Court has original jurisdiction of this action under CAFA, codified in pertinent part at 28 U.S.C. section 1332(d)(2).  As set forth below, this putative class action is removable under 28 U.S.C. sections 1453 and 1446 as the action: [A] involves 100 or more putative class members; [B] at least one class member is a citizen of a state different from that of at least one defendant; and [C] the amount in controversy exceeds $5,000,000, exclusive of interest and costs.  *See* 28 U.S.C. §§ 1332(d)(2) & (d)(6).

### A.    THIS ACTION INVOLVES 100 OR MORE PUTATIVE CLASS MEMBERS.

11.     Plaintiff purports to bring this class action on behalf of a putative class of employees, which he defines as: "All current and former hourly-paid or non-exempt employees who worked for any of the Defendants within the State of California at any time during the period from four years preceding the filing of this Complaint to final judgment and who reside in California."  (Complaint ("Compl.") at ¶14.)  As such, this matter is a "class action" as that term is defined pursuant to 28 U.S.C. sections 1332(d)(1)(B) and 1453.

12.     The number of putative class members exceeds 100 persons, as required by 28 U.S.C. section 1332(d)(5)(B).  During the alleged class period (beginning on June 7, 2018), SUEZ WTS has employed approximately 205 non-exempt employees who worked and who provided contact information with addresses in California (*see* Declaration of John Couch ("Couch Decl.") at ¶ 5), and thus the number of putative class members easily exceeds CAFA's 100-person threshold.

**B.     THE PARTIES ARE SUFFICIENTLY DIVERSE.**

13.     CAFA requires only minimal diversity for the purpose of establishing federal jurisdiction; at least one purported class member must be a citizen of a state different from any named defendant.  28 U.S.C. § 1332(d)(2)(A) ("any member of a class of plaintiffs is a citizen of a State different from any defendant").  Here, such minimal diversity exists among the parties.  Plaintiff is a citizen of a state (California) different from that of SUEZ WTS (Virginia).

14.     **Plaintiff's Citizenship**.  For purposes of determining diversity, a person is a "citizen" of the state in which they are domiciled.  *Kantor v. Wellesley Galleries, LDT.*, 704 F.2d 1088, 1090 (9th Cir. 1983) ("To show state citizenship for diversity purposes under federal common law a party must . . . be domiciled in the state.").  Residence is prima facie evidence of domicile.  *State Farm Mut. Auto Ins. Co. v. Dyer*, 19 F.3d 514, 520 (10th Cir. 1994) ("the place of residence is prima facie the domicile.").  Domicile for purposes of diversity is determined as of the time the lawsuit is filed.  *Lew v. Moss*, 797 F.2d 747, 750 (9th Cir. 1986).

15.     Plaintiff alleges he is an individual residing in the State of California, County of Los Angeles.  (Compl. at ¶ 5.).  Based on SUEZ WTS' records, throughout the period of his employment, Plaintiff provided SUEZ WTS a home address in Chula Vista, California, and thus was a resident of California.  (Couch Decl. at ¶ 10.)  Neither Plaintiff nor Plaintiff's counsel has provided a different address or indicated that Plaintiff does not remain domiciled in California.  (Declaration of McCoy at ¶ 4.)  Therefore, Plaintiff was at the time this action commenced, and still is a citizen of California.

16. **SUEZ WTS' Citizenship**. For diversity purposes, a corporation is deemed to be a citizen of the state in which it has been incorporated and the state where it has a principle place of business. *See* 28 U.S.C. § 1332(d)(1).

17. Plaintiff names SUEZ WTS as a defendant to this action, and names GE Mobile Water, Inc. as a co-defendant. (Compl. at ¶¶ 6-7.) Effective November 19, 2017, SUEZ WTS Services USA, Inc. is the new corporate name of GE Mobile Water, Inc. (Couch Decl. at ¶ 11, Ex. A (certificate of amendment).) It is undisputed neither of these entities are or were citizens of California.

18. At the time of the filing of this action, and at all relevant times, SUEZ WTS was a citizen of a state other than California within the meaning of 28 U.S.C. section 1332. (Couch Decl. at ¶¶ 12-13.) SUEZ WTS is now, and ever since this action commenced has been, incorporated under the laws of the Commonwealth of Virginia and, therefore, is a citizen of the Commonwealth of Virginia. (Couch Decl. at ¶ 12.) SUEZ WTS' principal place of business is located in Norfolk, Virginia. (Couch Decl. at ¶ 13.) The management of SUEZ WTS and core operations for SUEZ WTS are found in Norfolk, Virginia. (Couch Decl. at ¶ 13.) The core executive and administrative functions for SUEZ WTS are carried out in Trevose, Pennsylvania, the principal place of business of its parent company, SUEZ WTS Systems USA, Inc. (Couch Decl. at ¶ 13.) SUEZ WTS' overall executive and administrative functions are not found in the State of California. (*Id.*) Accordingly, SUEZ WTS has been, at all relevant times, a citizen of the Commonwealth of Virginia. *See Hertz Corp. v. Friend*, 559 U.S. 77, at 92 (2010). SUEZ WTS is not now, and was not at the time of the filing of the Complaint, a citizen of the State of California.

19. Because Plaintiff is a resident of California and SUEZ WTS is a citizen of Virginia, the minimal diversity requirement under CAFA is satisfied.

20. **Doe Defendants' Citizenship Is Irrelevant.** The citizenship of fictitious and unknown defendants should be disregarded for purposes of establishing removal jurisdiction under 28 U.S.C. Section 1332. *See* 28 U.S.C. 1441(b)(1) ("In determining

DEFENDANT'S NOTICE OF REMOVAL

whether a civil action is removable on the basis of [diversity jurisdiction], the citizenship of defendants sued under fictitious names shall be disregarded."). Thus, the existence of Doe defendants 1 through 100 does not deprive this Court of jurisdiction.

### C. THE AMOUNT IN CONTROVERSY MEETS THE CAFA THRESHOLD

21. **SUEZ WTS Need Only Show That The Amount In Controversy Exceeds The Statutory Minimum.** CAFA requires that the amount in controversy exceed $5,000,000, exclusive of interest and costs. 28 U.S.C. § 1332(d)(2). Under CAFA, the claims of the individual putative class members are aggregated to determine whether the amount in controversy exceeds the sum or value of $5,000,000. 28 U.S.C. § 1332(d)(6). "A defendant seeking removal of a putative class action must demonstrate, by the preponderance of evidence, that the aggregate amount in controversy exceeds the jurisdictional minimum." *Rodriguez v. AT&T Mobility Servs., LLC,* 728 F.3d 975, 981 (9th Cir. 2013). In addition, Congress intended for federal jurisdiction to be appropriate under CAFA "if the value of the matter in litigation exceeds $5,000,000 either from the viewpoint of the plaintiff or the viewpoint of the defendant, and regardless of the type of relief sought (e.g., damages, injunctive relief, or declaratory relief)." Senate Judiciary Committee Report, S. Rep. No. 109-14, at 42 (2005). Moreover, any doubts regarding the maintenance of interstate class actions in state or federal court should be resolved in favor of federal jurisdiction. *Id.* at 42-43 ("[I]f a federal court is uncertain about whether 'all matters in controversy' in a purported class action 'do not in the aggregate exceed the sum or value of $5,000,000,' the court should err in favor of exercising jurisdiction over the case. . . . Overall, new section 1332(d) is intended to expand substantially federal court jurisdiction over class actions. Its provision should be read broadly, with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant.").

22. While SUEZ WTS specifically denies liability as to all of Plaintiff's claims, and specifically denies the appropriateness of the case proceeding as a class action, SUEZ

WTS has a reasonable, good faith belief that the amount in controversy, as alleged and pled by Plaintiff, exceeds $5,000,000.  All calculations in support of the amount in controversy analysis are based on the allegations in Plaintiff's Complaint (along with other information as identified herein), assuming the truth of those allegations without any admission, and such calculations are not intended as an admission that any of Plaintiff's allegations have merit.

23.    **Preponderance Of The Evidence Standard.**  Plaintiff's Complaint does not allege the amount in controversy for the class he purports to represents.  Where a complaint does not allege a specific amount in damages, the removing defendant bears the burden of proving by a **preponderance of the evidence** that the amount in controversy exceeds the statutory minimum.  In *Rodriguez v. AT&T Mobility Servs. LLC*, 728 F.3d 975, 977 (9th Cir. 2013), the Ninth Circuit held that "the proper burden of proof imposed upon a defendant to establish the amount in controversy is the preponderance of the evidence standard."

24.    In 2011, Congress amended the federal removal statute to specify that, where the underlying state practice "permits recovery of damages in excess of the amount demanded . . . removal of the action is proper on the basis of an amount in controversy asserted . . . if the district court finds, by the preponderance of the evidence, that the amount in controversy exceeds the amount specified in section 1332(a)."  Pub.L. 112–63, December 7, 2011, 125 Stat. 758, § 103(b)(3)(C) (codified at 28 U.S.C. § 1446(c)(2) (emphasis added)); *accord Abrego v. Dow Chem. Co.*, 443 F.3d 676, 683 (9th Cir. 2006) ("Where the complaint does not specify the amount of damages sought, the removing defendant must prove by a preponderance of the evidence that the amount in controversy requirement has been met"); *Guglielmino v. McKee Foods Corp.,* 506 F.3d 696, 701 (9th Cir. 2007) ("the complaint fails to allege a sufficiently specific total amount in controversy … we therefore apply the preponderance of the evidence burden of proof to the removing defendant").  The defendant must show that it is "more likely than not" that the jurisdictional threshold is met.  *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398,

404 (9th Cir. 1996) ("where a plaintiff's state court complaint does not specify a particular amount of damages, the removing defendant bears the burden of establishing, by a preponderance of the evidence, that the amount in controversy exceeds $50,000. Under this burden, the defendant must provide evidence establishing that it is 'more likely than not' that the amount in controversy exceeds that amount").

25.    To satisfy this standard, the "defendants' notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014); *see also Arias v. Residence Inn by Marriott*, 936 F.3d 920, 922 (9th Cir. 2019) ("Because some remnants of our former antiremoval presumption seem to persist, we reaffirm three principles that apply in CAFA removal cases.  First, a removing defendant's notice of removal 'need not contain evidentiary submissions' but only plausible allegations of the jurisdictional elements"; "An assertion that the amount in controversy exceeds the jurisdictional threshold is not defeated merely because it is equally possible that damages might be 'less than the requisite ... amount'").

26.    The burden of establishing the jurisdictional threshold "is not daunting, as courts recognize that under this standard, a removing defendant is not obligated to research, state, and prove the plaintiff's claims for damages." *Korn v. Polo Ralph Lauren Corp.*, 536 F. Supp. 2d 1199, 1204-05 (E.D. Cal. 2008) (internal quotations omitted); *see also Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1117 (9th Cir. 2004) ("the parties need not predict the trier of fact's eventual award with one hundred percent accuracy").

27.    As explained by the Ninth Circuit, "the amount-in-controversy inquiry in the removal context is not confined to the face of the complaint."  *Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1117 (9th Cir. 2004); *see also Rodriguez v. AT&T Mobility Servs. LLC*, 728 F.3d 975, 981 (9th Cir. 2013) (holding that the ordinary preponderance of the evidence standard applies even if a complaint is artfully pled to avoid federal jurisdiction); *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 702 (9th Cir. 2007) (holding that even if a plaintiff affirmatively pled damages less than the jurisdictional

minimum and did not allege a sufficiently specific total amount in controversy, the removing defendant is still only required to show by a preponderance of evidence that the amount in controversy exceeds the jurisdictional threshold).

28.   If a plaintiff asserts statutory violations, the court should assume that the violation rate is 100% unless the plaintiff specifically alleges otherwise:

> "As these allegations reveal, plaintiff includes no fact-specific allegations that would result in a putative class or violation rate that is discernibly smaller than 100%, used by defendant in its calculations.  Plaintiff is the "master of [her] claim[s]," and if she wanted to avoid removal, she could have alleged facts specific to her claims which would narrow the scope of the putative class or the damages sought.  She did not."

*Muniz v. Pilot Travel Centers LLC*, 2007 WL 1302504, at *4 (E.D. Cal. May 1, 2007) (*citing Caterpillar, Inc. v. Williams,* 482 U.S. 386, 392 (1987); s*ee also Wheatley v. MasterBrand Cabinets*, 2019 WL 688209, at *5 (C.D. Cal. Feb. 19, 2019) ("Defendant and the Court must rely on assumptions regarding the rate of the alleged violations … Plaintiff does not allege that some putative class members were subject to distinct policies.  The Court therefore finds the assumption that uniform … policies were applied to **all** putative class members reasonable") (emphasis added); *Soratorio v. Tesoro Ref. and Mktg. Co., LLC*, 2017 WL 1520416, at *3 (C.D. Cal. Apr. 26, 2017) ("Plaintiff's Complaint could be reasonably read to allege a 100% violation rate.  The Complaint notes that Defendants 'did not provide' Plaintiff and the other class members 'a thirty minute meal period for every five hours worked,' and that this was Defendant's 'common practice.'  It also alleges that Defendants had a practice of 'requiring employees to work for four hours and more without a rest period' and that Defendants had a 'common practice' of failing to provide required breaks."); *Arreola v. The Finish Line,* 2014 WL 6982571, *4 (N.D. Cal. Dec. 9, 2014) ("District courts in the Ninth Circuit have permitted a defendant removing an action under CAFA to make assumptions when calculating the amount in controversy—such as assuming a 100 percent violation rate, or

assuming that each member of the class will have experienced some type of violation—when those assumptions are reasonable in light of the allegations in the complaint"); *Coleman v. Estes Express Lines, Inc.*, 730 F. Supp. 2d 1141, 1149 (C.D. Cal. 2010), *aff'd sub nom. Coleman v. Estes Exp. Lines, Inc.*, 631 F.3d 1010 (9th Cir. 2011) ("[C]ourts have assumed a 100% violation rate in calculating the amount in controversy when the complaint does not allege a more precise calculation").

29.     Numerous other District Courts have similarly concluded that alleging a policy of noncompliance in a complaint justifies the assumption of a 100 percent violation rate.  *See Franke v. Anderson Merchandisers LLC*, 2017 WL 3224656, at *2 (C.D. Cal. July 28, 2017) ("Courts in this Circuit have generally found the amount in controversy satisfied where a defendant assumes a 100% violation rate based on allegations of a 'uniform' illegal practice—or other similar language—and where the plaintiff offers no evidence rebutting this violation rate"); *Torrez v. Freedom Mortg.*, *Corp.*, 2017 WL 2713400, at *3-5 (C.D. Cal. June 22, 2017) (where complaint alleged "FMC engaged in a pattern and practice of wage abuse against its hourly-paid or non-exempt employees within the state of California," the complaint "can reasonably be interpreted to imply nearly 100% violation rates"); *Franke v. Anderson Merchandisers LLC*, 2017 WL 3224656, at *2 (C.D. Cal. July 28, 2017) ("Courts in this Circuit have generally found the amount in controversy satisfied where a defendant assumes a 100% violation rate based on allegations of a 'uniform' illegal practice – or other similar language – and where the plaintiff offers no evidence rebutting this violation rate"); *Feao v. UFP Riverside, LLC*, 2017 WL 2836207, at *5 (C.D. Cal. June 26, 2017) ("Plaintiff's allegations contain no qualifying words such as 'often' or 'sometimes' to suggest less than uniform violation that would preclude a 100 percent violation rate."); *Soratorio*, LLC, 2017 WL 1520416, at *3 ("Plaintiff's Complaint could be reasonably read to allege a 100% violation rate.  The Complaint notes that Defendants 'did not provide' Plaintiff and the other class members 'a thirty minute meal period for every five hours worked,' and that this was Defendants' 'common practice.'  It also alleges that Defendants had a

practice of 'requiring employees to work for four hours and more without a rest period' and that Defendants had a 'common practice' of failing to provide required breaks."); *Ritenour v. Carrington Mortg. Servs. LLC,* 228 F. Supp. 3d. 1025, 1030 (C.D. Cal. 2017) ("Given the vague language of the Complaint and the broad definition of the class, it is reasonable for Defendants to assume a 100% violation rate – especially since Plaintiffs offer no alternative rate to challenge Defendant's calculations."); *Jones v. Tween Brands, Inc.*, 2014 WL 1607636, at *3 (C.D. Cal. Apr. 22, 2014) (using 100 percent violation rate for waiting-time penalties since the complaint did not limit the number or frequency of violations).

30.    The alleged amount in controversy in this class action, in the aggregate, exceeds $5,000,000. The Complaint seeks to certify a class of "All current and former hourly-paid or non-exempt employees who worked for any of the Defendants within the State of California at any time during the period from four years preceding the filing of this Complaint to final judgment and who reside in California." (Compl., ¶14.) Accordingly, for purposes of the calculations in this Notice of Removal, the relevant time period starting "four years preceding the filing of this Complaint" is from **June 7, 2018** until the present.

31.    During the relevant time period identified in the Complaint, SUEZ WTS employed approximately 205 non-exempt hourly employees in California, who worked a total of approximately 31,954 workweeks. (Couch Decl., ¶ 7.) The average rate of pay for these 205 non-exempt employees was approximately $28.08 per hour. (Couch Decl., ¶ 6.)

32.    Plaintiff seeks to recover, on behalf of himself and the alleged class, unpaid wages and penalties for Defendants' alleged failure to pay minimum and overtime wages, failure to pay meal and rest period premiums, failure to pay all wages due during employment, failure to pay all wages due upon resignation or termination of employment, failure to provide accurate and complete itemized wage statements, failure to maintain accurate employment records, unreimbursed business expenses, and unfair business

practices.  (*See* Complaint.)  Plaintiff also seeks attorneys' fees and costs.  (*See* Complaint, Prayer for Relief.)

33.    As set forth below, the alleged amount in controversy implicated by the class-wide allegations exceeds $5,000,000.  **All calculations supporting the amount in controversy are based on the Complaint's allegations, assuming, without any admission of the truth of the facts alleged and assuming solely for purposes of this Notice of Removal that liability is established.**[2]

34.    The calculations below show that the alleged amount in controversy exceeds $5,000,000, when considering non-exempt employees, such as Plaintiff, and when considering the causes of action alleged in the Complaint.

35.    **Alleged Unpaid Overtime Compensation (First Cause of Action).** Plaintiff alleges that he and the putative class members were not compensated for all overtime hours worked as a result of Defendant's "pattern and practice of wage abuse against their hourly-paid or non-exempt employees within the State of California," including a "pattern and practice" of "failing to pay them for all regular and/or overtime wages earned…"  (Compl. at ¶ 27.)  Plaintiff alleges that employees "were not receiving accurate overtime compensation for all overtime hours worked."  (Compl. at ¶ 28.) Plaintiff separately alleges as part of this cause of action that SUEZ WTS failed to calculate the regular rate of pay used to calculate the overtime rate for the payment of overtime wages.  (Compl. at ¶ 42.)  Plaintiff then alleges that SUEZ WTS "intentionally and willfully failed to pay overtime wages owed to Plaintiff and the other class members," and thus "Plaintiff and the other class members are entitled to recover unpaid overtime compensation…"  (Compl. at ¶ 62.)

---

[2] All calculations supporting the amount in controversy are based on the Complaint's allegations (along with other documents as identified herein and in the Declaration of John Couch), assuming, without any admission, the truth of any of the allegations, and assuming liability (which is disputed) could be established.  Likewise, these calculations are based on the putative class alleged in the Complaint and in no way indicate that such class actually exists or would meet the requirements set forth in Fed. R. Civ. P. 23.  Defendant expressly reserves the right to challenge Plaintiff's claims, class definition and calculation of damages in all respects.  However, for purposes of this Notice of Removal, Defendant bases its calculations on the allegations, facts, and class definition contained in the Complaint as well as other documents identified herein.

36.     During the relevant time period identified in the Complaint, SUEZ WTS employed approximately 205 non-exempt employees in California.  (Couch Decl. at ¶ 5.) The average hourly rate of pay for these employees during the relevant period is $28.08 per hour.  (Couch Decl. at ¶ 6.)  Given the dates of service of the putative class members, these employees worked roughly 31,954 workweeks since June 7, 2018.  (Couch Decl. at ¶ 7.)  During the relevant period, the standard work day for SUEZ WTS' California non-exempt employees is and has been eight (8) hours, and the standard work week for SUEZ WTS' California non-exempt employees is and has been five (5) days. (Couch Decl. ¶ 14.)  Assuming that Plaintiff alleges a very conservative two hours of unpaid overtime per work week, the amount of alleged unpaid overtime Plaintiff seeks on behalf of the putative class is roughly **$2,691,804** (*i.e.*, $28.08 X 1.5 X 2 hours X 31,954 workweeks = $2,691,804).  Based on the allegations in the Complaint that, among other things, SUEZ WTS has a "pattern and practice" of failing to pay Plaintiff and other class members their accurate overtime compensation (Compl. at ¶ 27), an assumption of two hours of alleged unpaid overtime per week, per employee, is entirely reasonable.  Moreover, in light of Plaintiff's allegation that Plaintiff and the other class members earned an overtime rate of less than the appropriate regular rate of pay due to SUEZ WTS' alleged "failure to use the shift differential pay/non-discretionary bonuses/non-discretionary performance pay" (Compl. at ¶ 26), it is likely that the amount in controversy for Plaintiff's class-wide unpaid overtime claim is more than $2,691,804 because the allegedly-appropriate overtime rate would be more than the $42.12 overtime rate (*i.e.*, $28.08 X 1.5) that is reasonably assumed here.

37.     **Alleged Meal Period Compensation (Second Cause of Action).**  Plaintiff alleges that SUEZ WTS "engaged in a pattern and practice of wage abuse against their hourly-paid or non-exempt employees within the State of California," including "failing to pay them…for missed meal periods…in violation of California law."  (Compl. at ¶ 27.) Plaintiff further alleges that SUEZ WTS "failed to provide all requisite uninterrupted meal and rest periods to Plaintiff and the other class members."  (Compl. at ¶ 43.)  For

DEFENDANT'S NOTICE OF REMOVAL

example, Plaintiff alleges SUEZ WTS failed to provide timely, uninterrupted meal periods to Plaintiff and the other class members, and "failed to compensate Plaintiff and the other class members the full meal period premium for work performed during meal periods." (Compl. at ¶¶ 69-70.) Plaintiff does not limit the number of violations alleged in his Complaint, nor has he offered any evidence that he or other putative class members missed less than one legally required meal periods per week.

38. The statute of limitations for recovery for meal or rest period premium pay under California Labor Code section 226.7 pay is three years. *Murphy v. Kenneth Cole Prods., Inc.*, 40 Cal. 4th 1094, 1099 (2007) ("[T]he remedy provided in Labor Code section 226.7 constitutes a wage or premium pay and is governed by a three-year statute of limitations."). However, Plaintiff alleges a claim for meal and rest break premiums pay as part of his unfair competition claim under Business and Professions Code section 17200, et seq. (Compl., ¶ 121.) Although SUEZ WTS contends that meal and rest break premium pay cannot be recovered under Business and Professions Code section 17200 (*Pineda v. Bank of America, N.A.*, 50 Cal. 4th 1389, 1401 (2010)), according to the allegations of Plaintiff's Complaint, the four-year statute of limitations applies for purposes of removal. Cal. Bus. & Prof. Code § 17208. Thus, for determining the amount in controversy, the four-year statute of limitations applies to Plaintiff's meal and rest period claims.

39. Based on these allegations of a "pattern and practice" of failing to provide meal periods, it is reasonable to assume that Plaintiff is alleging two meal period violations per workweek. During the relevant time period identified in the Complaint, SUEZ WTS employed approximately 205 non-exempt employees in California, who worked approximately 31,954 workweeks since June 7, 2018. (Couch Decl. at ¶ 7.) During the relevant period, the standard work day for SUEZ WTS' California non-exempt employees is and has been eight (8) hours, and the standard work week for SUEZ WTS' California non-exempt employees is and has been five (5) days. (Couch Decl. ¶ 14.) Given the dates of service of the putative class members and the average hourly rate

of $28.08 (Couch Decl. at ¶ 6), and assuming two meal break violations per week for each employee, the amount of alleged unpaid meal break premiums Plaintiff seeks on behalf of the putative class is **$1,794,536.64** ($28.08 X 2 X 31,954 = $1,794,536.64).

40.     **Alleged Rest Period Compensation (Third Cause of Action).**  Plaintiff alleges that SUEZ WTS "engaged in a pattern and practice of wage abuse against their hourly-paid or non-exempt employees within the State of California," including "failing to pay them for…rest breaks in violation of California law." (Compl. at ¶ 27.)  Plaintiff further alleges that SUEZ WTS "failed to provide all requisite uninterrupted meal and rest periods to Plaintiff and the other class members." (Compl. at ¶ 43.)  For example, Plaintiff alleges SUEZ WTS "willfully required Plaintiff and the other class members to work during rest periods and failed to pay Plaintiff and the other class members the full rest period premium for work performed during rest periods." (Compl. at ¶ 79.)  Plaintiff does not limit the number of violations alleged in his Complaint, nor has he offered any evidence that he or other putative class members missed less than one legally required rest periods per week.

41.     Based on these allegations of a "pattern and practice" of failing to provide rest breaks and regular violations, it is reasonable to assume that Plaintiff is alleging two rest break violations per work week.  During the relevant time period identified in the Complaint, SUEZ WTS employed approximately 205 non-exempt employees in California, who worked approximately 31,954 workweeks since June 7, 2018.  (Couch Decl. at ¶ 7.)  During the relevant period, the standard work day for SUEZ WTS' California non-exempt employees is and has been eight (8) hours, and the standard work week for SUEZ WTS' California non-exempt employees is and has been five (5) days. (Couch Decl. ¶ 14.)  Given the dates of service of the putative class members and the average hourly rate of $28.08 (Couch Decl. at ¶ 6,)  and assuming two rest break violations per week for each employee, the amount of alleged unpaid rest break premiums Plaintiff seeks on behalf of the putative class is  **$1,794,536.64** ($28.08 X 2 X 31,954 = $1,794,536.64).

15

42.    **Alleged Waiting Time Penalties (Fifth Cause of Action)**:  Plaintiff also seeks damages for alleged violations of Labor Code Section 203, for SUEZ WTS' willful failure to pay employees all wages due and payable at the time of termination of employment.  (Compl. at ¶¶ 91-94.)  Plaintiff seeks statutory waiting time penalties "for Plaintiff and the other class members who have left Defendants' employ…"  (Compl. at Prayer for Relief, ¶¶ 30-34.)[3]

43.    It is reasonable to assume that each employee waited over 30 days for payment of any allegedly unpaid wages.  *See Tajonar v. Echosphere*, LLC, 2015 WL 4064642, at *4-5 (S.D. Cal. July 2, 2015) (finding reasonable the defendant-employer's assumption that each employee was entitled to the maximum thirty-day penalty); *Byrd v. Masonite Corp.*, 2016 WL 2593912, at *3 (C.D. Cal. May 5, 2016) ("[I]t is not unreasonable for [defendant] to assume that each employee would be entitled to the maximum wage penalty – thirty days – for waiting time violations").

44.    During the relevant three-year statutory period (starting June 7, 2019), 56 non-exempt employees have quit or been terminated from SUEZ WTS' employ in California.  (Couch Decl. at ¶ 9.)  Applying the average hourly rate of $28.08, and accepting Plaintiff's contention that they are entitled to 30 days of pay in penalties under Labor Code section 203 (i.e., 240 hours of pay (30 days times 8 hours)), the amount in controversy for the waiting time penalties is roughly **$377,395** ($28.08 X 8 hrs. X 30 days X 56 employees = $377,395.50). The standard work day for SUEZ WTS' non-exempt employees in California is and has been eight hours.  (Couch Decl. ¶ 14.)

45.    **Wage Statement Penalties (Seventh Cause of Action)**  Plaintiff alleges that SUEZ WTS did not provide complete and accurate wage statements to Plaintiff and the other class members.  (Compl. at ¶ 37.)  "The deficiencies included, *inter alia*, the

---

[3] The statute of limitations for a Section 203 claim is 3 years.  *See Pineda v. Bank of Am., N.A.*, 50 Cal. 4th 1389, 1399 (2010) ("if an employer failed to timely pay final wages to an employee who quit or was fired, the employee would have had one year to sue for the section 203 penalties but, … three years to sue for the unpaid final wages giving rise to the penalty").

DEFENDANT'S NOTICE OF REMOVAL

failure to include the total number of hours worked by Plaintiff and the other class members." (*Id.*)

46.     Based on Plaintiff's class-wide allegation that every wage statement issued to Plaintiff and the other class members violated Labor Code Section 226(a), Plaintiff seeks wage statement penalties up to a maximum of $4,000 per employee.  Under Labor Code Section 226(e), the alleged statutory penalties sought by Plaintiff are $50 for the initial pay period and $100 for each subsequent pay period.  Cal. Lab. Code Section 226(e); Compl. at Prayer for Relief, ¶ 41.  Between June 7, 2021 and the present, 175 non-exempt employees worked a total of 4,364 pay periods for SUEZ WTS.  (Couch Decl. at ¶ 8).  Based on the 4,364 pay periods worked during the relevant alleged one-year statute of limitations period, the employees worked a total of 175 initial pay periods, and 4,189 subsequent pay period, for a total of **$427,650** in alleged wage statement penalties. (175 X $50 + 4,189 X $100 = $427,650).

47.     **Alleged Unreimbursed Business Expenses (Ninth Cause of Action**). Plaintiff alleges that "Plaintiff and the other class members incurred necessary business-related expenses and costs that were not fully reimbursed by Defendants."  (Compl. at ¶ 115.)

48.     Based on these class-wide allegations of a policy and practice of failing to reimburse employees necessary business-related expenses and costs, it is reasonable to assume that Plaintiff is alleging unreimbursed expenses of $20 per month per employee. During the relevant time period identified in the Complaint, SUEZ WTS employed approximately 205 non-exempt employees in California, who worked approximately 31,954 workweeks during the relevant period.  (Couch Decl. at ¶ 7.)  Assuming there are roughly 4 workweeks in every month, these employees worked a total of roughly 7,988 months during the relevant period.  Given the dates of service of the putative class members, and assuming alleged unreimbursed expenses of $20 per month for 7,988 months, the amount of alleged unreimbursed expenses Plaintiff seeks on behalf of the putative class is **$159,760**.  (7,988 months X $20 per month = $159,760).

49.    **Approximate Aggregate Amount In Controversy Without Attorneys'**
**Fees**.  Although SUEZ WTS denies Plaintiff's allegations that he or the putative class are
entitled to any relief for the above-mentioned claims, based on the forgoing calculations,
the aggregate amount in controversy for the putative class for all asserted claims,
exclusive of attorneys' fees, is approximately **$7,245,682.78**, calculated as follows:

| | |
|---|---|
| **$2,691,804** | Unpaid Overtime Claim |
| **$1,794,536.64** | Meal Period Claim |
| **$1,794,536.64** | Rest Period Claim |
| **$377,395.50** | Waiting Time Penalties |
| **$427,650** | Wage Statement Penalties |
| **$159,760** | Reimbursement Claim |

50.    **Attorneys' Fees**:  The Complaint also alleges that putative class members
are entitled to recover attorneys' fees.  (Compl., Prayer for Relief at ¶ 8, 15, 51, 56.)
Requests for attorneys' fees should be taken into account in ascertaining the amount in
controversy.  *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998) ("[w]here
an underlying statute authorizes an award of attorneys' fees, either with mandatory or
discretionary language, such fees may be included in the amount in controversy.").

51.    A reasonable estimate of fees likely to be recovered may be used in
calculating the amount in controversy.  *Longmire v. HMS Host USA, Inc.*, 2012 WL
5928485, at *9 (S.D. Cal. Nov. 26, 2012) ("[C]ourts may take into account reasonable
estimates of attorneys' fees likely to be incurred when analyzing disputes over the
amount in controversy under CAFA.") (*citing Brady*, 243 F. Supp. 2d at 1010-11);
*Muniz*, 2007 WL 1302504 at *4 (attorneys' fees appropriately included in determining
amount in controversy).

52.    The Ninth Circuit has held that "a court must include future attorneys' fees
recoverable by statute or contract when assessing whether the amount-in-controversy
requirement is met."  *Fritsch v. Swift Transp. Co. of Arizona, LLC*, 899 F.3d 785, 794
(9th Cir. 2018); *see also Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 414-15 (9th

Cir. 2018) ("[T]he amount in controversy is not limited to damages incurred prior to removal – for example, it is not limited to wages a plaintiff-employee would have earned before removal (as opposed to after removal).  Rather, the amount in controversy is determined by the complaint operative at the time of removal and encompasses all relief a court may grant on that complaint if the plaintiff is victorious."); *Lucas v. Michael Kors (USA), Inc.*, 2018 WL 2146403 (C.D. Cal. May 9, 2018) (holding that "unaccrued post-removal attorneys' fees can be factored into the amount in controversy" for CAFA jurisdiction).

53.    Indeed, the Ninth Circuit again recently explicitly confirmed that "when a statute or contract provides for the recovery of attorneys' fees, prospective attorneys' fees must be included in the assessment of the amount in controversy," including in the context of determining CAFA jurisdiction and as a "principle[] that appl[ies] in CAFA removal cases."  *Arias*, 936 F.3d at 922.

54.    In the class action context, courts have found that 25 percent of the aggregate amount in controversy is a benchmark for attorneys' fees award under the "percentage of fund" calculation and courts may depart from this benchmark when warranted.  *See, e.g.*, *Wheatley*, 2019 WL 688209, at *6 (C.D. Cal. Feb. 19, 2019) (finding that an estimate of attorney's fees of 25% reasonable); *Ramos v. Schenker, Inc.*, 2018 WL 5779978, at *3 (C.D. Cal. Nov. 1, 2018) ("[T]the 25% benchmark provides a non-speculative guidepost for assessing jurisdiction."); *Campbell v. Vitran Exp., Inc.*, 471 F. App'x 646, 649 (9th Cir. 2012) (attorneys' fees appropriately included in determining amount in controversy under CAFA); *Powers v. Eichen*, 229 F.3d 1249, 1256-57 (9th Cir. 2000) ("We have also established twenty-five percent of the recovery as a 'benchmark' for attorneys' fees calculations under the percentage-of-recovery approach"); *Wren v. RGIS Inventory Specialists*, 2011 U.S. Dist. LEXIS 38667 at *78-84 (N.D. Cal. Apr. 1, 2011) (finding ample support for adjusting the 25% presumptive benchmark upward and found that plaintiffs' request for attorneys' fees in the amount of 42% of the total settlement payment was appropriate and reasonable in the case); *Cicero*

19

*v. DirecTV, Inc.*, 2010 U.S. Dist. LEXIS 86920 at *16-18 (C.D. Cal. July 27, 2010) (finding attorneys' fees in the amount of 30% of the total gross settlement amount to be reasonable); *see also In re Quintas Secs. Litig.*, 148 F. Supp. 2d 967, 973 (N.D. Cal. 2001) (noting that in the class action settlement context the benchmark for setting attorneys' fees is 25 percent of the common fund).

55.    Here, even under the conservative benchmark of 25 percent of the total amount in controversy for Plaintiff's claims, attorneys' fees alone would be upward of **$1,811,420.70** in this case ($7,245,682.78 amount in controversy × 0.25).

56.    Although SUEZ WTS denies Plaintiff's allegations that he or the putative class are entitled to any relief, based on Plaintiff's allegations and prayer for relief, and a conservative estimate based on those allegations, the total amount in controversy is at least **$9,057,103**, including attorneys' fees.  This total amount in controversy far exceeds the $5,000,000 threshold set forth under 28 U.S.C. § 1332(d)(2) for removal jurisdiction.

57.    Accordingly, because diversity of citizenship exists, and the amount in controversy exceeds $5,000,000, this Court has original jurisdiction of this action pursuant to 28 U.S.C. section 1332(d)(2).  This action is therefore a proper one for removal to this Court pursuant to 28 U.S.C. section 1441(a).

58.    To the extent that Plaintiff has alleged any other claims for relief in the Complaint over which this Court would not have original jurisdiction under 28 U.S.C. section 1332(d), the Court has supplemental jurisdiction over any such claims pursuant to 28 U.S.C. section 1367(a).

## IV.    VENUE

59.    Venue lies in the United States District Court for the Southern District of California, pursuant to 28 U.S.C. §§ 1391(a), 1441, and 84(a).  This action originally was brought in San Diego County Superior Court of the State of California, which is located within the Southern District of California.  28 U.S.C. § 84(d).  Therefore, venue is proper because it is the "district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a).

## V. NOTICE OF REMOVAL

60. A true and correct copy of this Notice of Removal will be promptly served on Plaintiff and filed with the Clerk of the San Diego County Superior Court of the State of California as required under 28 U.S.C. § 1446(d). The Notice of Removal is concurrently being served on all parties.

61. In compliance with 28 U.S.C. section 1446(a), Defendants have attached a copy of the state court papers served herein. *See* Exhibits A, B and C (the Complaint & Summons, and Defendants' Answer, respectively). No other pleadings have been served by the parties. (McCoy Decl. at ¶ 5).

## VI. PRAYER FOR REMOVAL

62. WHEREFORE, SUEZ WTS prays that this civil action be removed from the Superior Court of the State of California, County of San Diego to the United States District Court for the Southern District of California.


DATED: August 5, 2022                    SEYFARTH SHAW LLP


By: */s/ Ryan McCoy*
Ryan McCoy
Michelle Zakarian
Attorneys for Defendants
SUEZ WTS SERVICES USA, INC. and
GE MOBILE WATER, INC.

85725439v.1