# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARTIN BULNES, individually, and on behalf of other members of the general public similarly situated,<br><br>        Plaintiff,<br><br> v.<br><br>SUEZ WTS SERVICES USA, INC.,<br><br>        Defendant. | Case No. 22-cv-01154-BAS-AHG<br><br>**ORDER DENYING PLAINTIFF'S MOTION TO REMAND PROCEEDINGS TO STATE COURT**<br><br>**(ECF No. 14)** |

   Defendant Suez WTS Services USA, Inc. removed this case from San Diego County Superior Court on August 5, 2022, asserting federal jurisdiction exists under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d). (Notice of Removal, ECF No. 1.) Plaintiff filed a motion to remand, arguing Defendant's Notice of Removal fails to show that CAFA's amount in controversy requirement has been satisfied. (Mot. to Remand, ECF No. 14.) Defendant filed an Opposition (Opp'n, ECF No. 16) and Plaintiff replies (Reply, ECF No. 18). The Court finds this Motion suitable for determination on the papers submitted and without oral argument. *See* Fed. R. Civ. P. 78(b); Civ. L.R. 7.1(d)(1). For the reasons set forth below, the Court **DENIES** Plaintiff's Motion to Remand. (Mot.)

## I.  BACKGROUND

Defendant Suez WTS Services USA employed Plaintiff Martin Bulnes as a Service Technician, an hourly non-exempt employee, from approximately December 2019 to February 2021.  (Compl. ¶ 19, ECF No. 1-3, Couch Decl. ¶ 4, ECF No. 1-6.)  Plaintiff alleges that Defendant denied him and other employees the benefits of the California Labor Code and the Industrial Welfare Commission Wage Orders.  Plaintiff alleges that Defendant failed to pay meal and rest period premiums, furnish final wages in a timely manner, pay regular and overtime wages, provide accurate and itemized wage statements, keep requisite payroll records, and reimburse employees for business expenses.  (Compl. ¶¶ 26–53.)  Plaintiff asserts these claims on behalf of "[a]ll current and former hourly-paid or non-exempt employees who worked for [Defendant] within the State of California at any time during the period from four years preceding [August 5, 2022] to final judgment and who reside in California."  (*Id.* ¶ 14.)  Plaintiff proposes three subclasses: (1) all class members who failed to receive overtime, (2) those subject to Defendant's rounding policy, and (3) those required to stay on Defendant's premises during rest breaks.  (*Id.*)

## II.  LEGAL STANDARD

A case is removable only if it could have been originally filed in federal court.  *Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 163 (1997) ("Defendants generally may remove 'any civil action brought in a State court of which the [federal] district courts … have original jurisdiction.'" (quoting 28 U.S.C. § 1441(a))).  Whether removal is warranted depends on the pleadings "as of the time the complaint is filed and removal is effected."  *Strotek Corp. v. Air Transp. Ass'n of Am.*, 300 F.3d 1129, 1131 (9th Cir. 2002).

CAFA expressly extends "federal jurisdiction to state-law claims in class actions under relaxed diversity requirements."  *Floyd v. Am. Honda Motor Co.*, 966 F.3d 1027, 1036 (9th Cir. 2020) (citing 28 U.S.C. § 1332(a)).  While "no antiremoval presumption attends cases invoking CAFA," *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 89–91 (2014), "the burden of establishing removal jurisdiction remains, as before, on the proponent of federal jurisdiction." *Abrego v. Dow Chem.*, 443 F.3d 676, 685 (9th Cir.

2006). CAFA confers federal jurisdiction over class actions involving: (1) minimal diversity; (2) at least 100 putative members; and (3) over $5,000,000 in controversy, inclusive of attorney's fees but exclusive of costs and interest. 28 U.S.C. § 1332(d)(2), (5). Class members' claims may be aggregated to reach the amount in controversy requirement. *E.g.*, *Biag v. King George – J&J Worldwide Servs. LLC*, No. 20-cv-307-BAS-DEB, 2020 WL 4201192, at * 3 (S.D. Cal. July 22, 2020).

### III.  ANALYSIS

At issue is whether Defendant plausibly alleges that CAFA's amount in controversy requirement is met. The Court first reviews the short and plain statement requirement and Defendant's amount in controversy assessment. Next, the Court considers Plaintiff's attacks on Defendant's assessment, including Defendant's proposed violation rate and inclusion of attorney's fees in the amount in controversy.

**A.   "Short and Plain" Statement Under 28 U.S.C. § 1446(a)**

To remove a case to federal court, the defendant must file a notice of removal "containing a short and plain statement of the grounds for removal." 28 U.S.C. § 1446(a). The defendant's notice of removal "need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold[.]" *Dart Cherokee*, 574 U.S. at 89. If the defendant relied on assumptions to approximate the amount in controversy, those assumptions "cannot be pulled from thin air but need some reasonable ground underlying them." *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1199 (9th Cir. 2015) ("[A] defendant cannot establish removal jurisdiction by mere speculation and conjecture, with unreasonable assumptions."). When the defendant's amount in controversy assertion is sufficiently challenged, as Plaintiff argues is the case here, "both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." *Dart Cherokee*, 574 U.S. at 88.

To determine the amount in controversy, Defendant makes assumptions based upon Human Resources Manager John Couch's Declaration and Plaintiff's Complaint. Defendant assumes two unpaid hours of overtime per week and two meal and rest period

violations per week per employee. (Notice ¶¶ 36, 39, 41.) Defendant bases these assumptions on Plaintiff's complaint, which alleges Defendant engaged in a "pattern and practice of wage abuse against [its] hourly-paid or non-exempt employees within the State of California. This pattern and practice involved, *inter alia*, failing to pay them for all regular and/or overtime wages earned and for missed meal periods and rest periods in violation of California law." (Compl. ¶ 27, Notice ¶ 33.) Defendant approximates the amount in controversy using the facts provided in Mr. Couch's Declaration addressing the standard workday and week, the number of non-exempt employees, and the average minimum wage. (Couch Decl. ¶¶ 5–6, 14.) Defendant's estimation for only the unpaid overtime and meal and rest period violations claims amounts to **$6,280,877.28**, with an additional $1,811,420.70 proposed for attorney's fees. (Notice ¶¶ 36, 39, 41, 56.) Therefore, the Court focuses on these claims when addressing Plaintiff's arguments below, because if established, these claims would exceed the $5,000,000 threshold.

  **B.**   **Plaintiff's Challenges to Defendant's Allegations**

Plaintiff purports to make a factual attack on Defendant's amount in controversy assertion by challenging the reasonableness of Defendant's assumptions. (Reply 3.) For this reason, Plaintiff argues that the amount in controversy is contested, and Defendant must produce "summary-judgment type evidence." (Reply 2 (citing *Rodriguez v. US Bank Nat'l Ass'n*, No. 2:16-cv-05590-CAS(RAOx), 2016 WL 5419403, at *4 (C.D. Cal. Sept. 26, 2016)).)

  A factual attack must challenge the "truth of the defendant's jurisdictional allegations by making a reasoned argument as to why any assumptions on which they are based are not supported by evidence." *Harris v. KM Indus., Inc.*, 980 F.3d 694, 700 (9th Cir. 2020). Conversely, "a 'facial' attack accepts the truth of the [defendant's] allegations but asserts that they 'are insufficient on their face to invoke federal jurisdiction.'" *Id.* at 699 (quoting *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014)). The Court applies this distinction below when addressing the merits of Plaintiff's attacks on Mr. Couch's

Declaration, Defendant's proposed violation rate, and Defendant's inclusion of attorney's fees in its amount in controversy.

### 1. Mr. Couch's Declaration

The Court starts with Plaintiff's attacks on Mr. Couch's Declaration and Defendant's methods for approximating the amount in controversy. Plaintiff argues that Mr. Couch's Declaration is incompetent evidence because of its conclusory nature and lack of a "single business record, spreadsheet, or other supporting document." (Mot. 6.) Further, Plaintiff questions Mr. Couch's personal knowledge and methods used to collect the employee information in the Declaration. (Mot. 7.) Plaintiff specifically argues that Defendant has no reasonable basis for assuming the class members' shifts were eight hours or "of sufficient length to mandate the provision of meal and rest periods." (Mot. 19.) Plaintiff similarly posits that Defendant has no reasonable basis to assume how many employees were full-time or part-time, or their average shift length. (Mot. 13.)

Defendant counters that Plaintiff mounts an unfounded facial attack and fails to challenge the facts underlying Defendant's assertions. (Opp'n 12.) Defendant posits that Plaintiff fails to challenge the factual basis of Defendant's calculations with any competing evidence, such as the "number of putative class members, pay rates, and workweek and hours worked calculations." (*Id.*)

Both Plaintiff and Defendant cite to the informative Ninth Circuit cases *Harris v. KM Industrial, Inc.* and *Salter v. Quality Carriers, Inc.* In *Harris*, the plaintiff attacked the truth of the defendant's factual allegations. 980 F.3d at 702. The court considered the plaintiff's claims, including denied meal and rest breaks, on behalf of two subclasses: a "Meal Period Sub-Class" and "Rest Period Sub-Class." *Id.* at 697. The defendant provided two human resources declarations; both failed to address if the hourly employee class members worked shifts long enough to qualify for meal and rest periods. *Id.* at 700–01. The court concluded that the defendant's assumption that all hourly employees were also members of both sub-classes was unsupported by the declarations. *Id.* at 702. The plaintiffs therefore lodged a factual attack on the lack of substance underlying the

defendant's assumptions, and the defendant failed to submit any further evidence, making remand appropriate. *Id.*

The present case is distinguishable from *Harris* because the depth of information included in Mr. Couch's Declaration provides reasonable grounds for Defendant's assumptions. Plaintiff's argument that Defendant has no basis for assuming class members worked eight hours shifts, were full time, or worked sufficient length to receive meal and rest periods is not well taken because Mr. Couch expressly stated these facts. (Couch Decl. ¶ 14, Mot. 13, 19.) Here, unlike in *Harris*, Defendant's Declaration establishes, "[d]uring the relevant period, the standard workday for SUEZ WTS' California non-exempt employees is and has been (8) hours, and the standard workweek for SUEZ WTS' California non-exempt employees is and has been five (5) days." (Couch Decl. ¶ 14.) Given these facts, the Court does not face the same issue with sub-classes as in *Harris*. Additionally, Plaintiff fails to provide evidence that Defendant's employees did not work full time. Hence, Defendant made a "plausible assumption," as required by *Dart*, that the class members worked an average of full time, considering Mr. Couch's Declaration. *See Dart Cherokee*, 574 U.S. at 89.

In *Salter*, the plaintiff mounted a facial attack on the defendant's allegations. *Salter v. Quality Carriers*, 974 F.3d 959, 964 (9th Cir. 2020). The plaintiff asserted similar labor code claims that hinged on the defendant allegedly misclassifying employees as independent contractors. *Id.* at 961. The defendant provided a declaration from its Chief Information Officer detailing the number of contractors it employed. *Id.* at 962. The plaintiff did not dispute the truth of the defendant's assumptions, such as the number of members in the class, but alleged that defendant failed to support its assumptions with competent proof and only offered conclusory statements. *Id.* at 964. Since the plaintiff failed to mount a factual attack, defendant had no further responsibility to submit proof, and remand was not justified. *Id.* at 965.

The present case shares similarities with *Salter* because Plaintiff challenges the "form, not the substance," of Defendant's showing and supporting Declaration. *Id.* at 961.

Plaintiff repeatedly argues that Mr. Couch's Declaration is not competent evidence and Defendant's failure to provide "underlying records" is "particularly inexcusable" since Defendant is an employer. (Mot. 5, 7.) Plaintiff's argument is unfounded. Defendant has no responsibility to provide evidentiary submissions or "underlying records," as Plaintiff contends. (Mot. 5.) In *Dart Cherokee*, the Supreme Court clarified that a notice of removal "need not contain evidentiary submissions," and must only set forth plausible allegations of the amount in controversy. 574 U.S. at 84.

Thus, the Court finds that Plaintiff mounts an unpersuasive facial attack on Mr. Couch's Declaration, because Plaintiff challenges the form rather than the substance of the facts expressed. *See Salter*, 974 F.3d at 961.

### 2.     Defendant's Proposed Violation Rate

Next, the Court considers Plaintiff's attack on the proposed violation rate Defendant uses to calculate the amount in controversy. Plaintiff characterizes Defendant's proposed 40% violation rate for unpaid overtime and meal and rest premiums as "unreasonable" and "speculative," without offering any concrete evidence to the contrary. (Mot. 11–12, 14.) At times, Plaintiff argues Defendant assumes a "100% violation rate" of two meal and rest premium violations and two hours of unpaid overtime per week, which Plaintiff believes is unsupported by the Complaint.[1] (Mot. 9–14.)

Plaintiff offers only a facial attack, because he fails to make a "a reasoned argument as to why any assumptions on which [Defendant's jurisdictional allegations] are based are not supported by evidence." *See Harris*, 980 F.3d at 700–01; *Salter*, 974 F.3d at 965; *see also Mills v. Rescare Workforce Servs.*, No. 2:20-cv-10860-FLA (JPRx), 2022 WL 843461, at *7 (C.D. Cal. Mar. 22, 2022) (holding plaintiff's attack on defendant's adopted

---

[1] In Defendant's Notice of Removal, Defendant argues that when plaintiffs allege any statutory violations, the court "should assume that the violation rate is 100% unless the plaintiff specifically alleges otherwise." (Notice ¶ 28.) In its Opposition to Plaintiff's Motion to Remand, Defendant clarifies its calculations use only a 40% violation rate for unpaid overtime and meal and rest period premium violations. (Opp'n 13–17.)

violation rates to be facial because of plaintiff's failure to introduce evidence or reasonable arguments to the contrary).

This Court, like others, finds that Defendant's 40% violation rate is a plausible assumption given Plaintiff's "pattern and practice" allegations. (Compl. ¶ 27.) District courts have found violation rates of 25% to 60% to be reasonably assumed as a matter of law based on "pattern and practice" or "policy and practice allegation[s]." *Avila v. Rue 21, Inc.*, 432 F. Supp. 3d 1175, 1189 (E.D. Cal. 2020); *Olson v. Becton, Dickinson & Co.*, No. 19-CV-865-MMA-BGS, 2019 WL 4673329, at *4 (S.D. Cal. Sept. 25, 2019) (finding 25% violation rate to be appropriate based on plaintiff's "pattern and practice" allegations); *Elizarraz v. United Rentals, Inc.*, No. 2:18-CV-09533-ODW (JC), 2019 WL 1553664, at *3–4 (C.D. Cal. Apr. 9, 2019) (using 50% violation rate for meal period claim and 30% violation rate for rest period claim); *Bryant v. NCR Corp.*, 284 F. Supp. 3d 1147, 1151 (S.D. Cal. 2018) (using 60% violation rate for the meal period claim and 30% violation rate for rest period claim); *Alvarez v. Off. Depot, Inc.*, No. CV 17–7220 PSG (AFMx), 2017 WL 5952181, at *3 (C.D. Cal. Nov. 30, 2017) (using 60% violation rate).

In short, Plaintiff mounts only a facial attack on Defendant's proposed violation rate, because he fails to attack the rate's factual underpinnings. Defendant's proposed violation rate is plausible, making Plaintiff's attack unsuccessful.

### 3. Defendant's Inclusion of Attorney's Fees

Finally, the Court considers Defendant's inclusion of attorney's fees in its amount in controversy assessment. Defendant argues it is entitled to include the putative class members' attorney's fees in its amount in controversy. (Notice ¶¶ 50–60.) Defendant cites *Fritsch*, where the Ninth Circuit held a "court must include future attorneys' fees recoverable by statute or contract when assessing whether the amount-in-controversy requirement is met." 899 F.3d 785, 794 (9th Cir. 2018). Defendant argues that in the class action context, 25% of the total amount in controversy is an appropriate benchmark for attorney's fees, citing to district court decisions such as *Wheatley v. MasterBrand Cabinets*. No. EDCV 18-2127 JGB (SPx), 2019 WL 688209, at *5 (C.D. Cal. Feb. 19, 2019) (Notice

¶ 54). Defendant submits that attorney's fees would add $1,811,420.70 to its approximated amount in controversy for unpaid overtime, meal period, and rest period claims. (Notice ¶¶ 49, 55.) Plaintiff contends that Defendant's calculations are unsubstantiated, and cites *Galt G/S v. JSS Scandinavia*, which held that attorney's fees can only be counted towards the amount in controversy if "an underlying statute authorizes an award of attorneys' fees, either with mandatory or discretionary language." 142 F.3d 1150, 1156 (9th Cir. 1998).

This Court agrees with Plaintiff with respect to Defendant's burden of proof, considering *Fristch*. 899 F.3d at 794; *see also, e.g.*, *Akana v. Estee Lauder*, No. LA CV19-00806 JAK (PLAx), 2019 WL 2225231, at *8 (C.D. Cal. May 23, 2019) (refusing to hold that 25% of total recovery was reasonable estimate of plaintiff's potential attorney's fees in wage and hour class action where defendant did not provide other evidence). Defendant fails to provide any statutes that authorize including attorney's fees, so the Court finds Defendant does not meet its burden.

Hence, Plaintiff mounts a successful facial attack on Defendant's inclusion of attorney's fees in its amount in controversy assessment.

* * *

Overall, the Court rejects Plaintiff's challenges to Defendant's reliance on Mr. Couch's Declaration and Defendant's proposed violation rate, but agrees that Defendant did not meet its burden to include attorney's fees in its assessment. However, even without attorney's fees, Defendant's amount in controversy calculation still surpasses the $5,000,000 required by CAFA. Because Defendant has met its burden of establishing federal subject matter jurisdiction over this putative class action pursuant to CAFA, Plaintiff's Motion to Remand is denied.

/ / /
/ / /
/ / /
/ / /
/ / /

## IV. CONCLUSION

For the reasons set forth above, the Court finds that it has subject matter jurisdiction over this action pursuant to CAFA. Accordingly, the Court **DENIES** Plaintiff's Motion to Remand (ECF No. 14).

**IT IS SO ORDERED.**

DATED: February 23, 2023

Hon. Cynthia Bashant
United States District Judge